1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAFAEL CUEVAS,

            Petitioner,

    v.

KEVIN R. CHAPPELL, Warden,

            Respondent.

Case No.  12-cv-01161-YGR (PR)

**ORDER GRANTING RESPONDENT'S RENEWED MOTION TO DISMISS PETITION AS UNTIMELY; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Rafael Cuevas, a state prisoner, filed the instant *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Before the Court is Respondent's renewed motion to dismiss the instant petition as untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d).  Dkt. 28.  Respondent also moves to dismiss claims 4-10 in the petition on the additional ground that they are procedurally barred from review.  Petitioner filed an opposition to the renewed motion. Dkt. 29.  Respondent filed a reply.  Dkt. 30.

Having read and considered the papers submitted and being fully informed, the Court GRANTS Respondent's renewed motion and dismisses the petition with prejudice.

I.      **BACKGROUND**

As discussed in the Court's March 17, 2015 Order denying Respondent's previously-filed motion to dismiss, the following procedural background is undisputed:

> On May 28, 2008, a San Francisco County jury convicted Petitioner of second degree murder, enhanced for personal use of a deadly weapon.  Dkt. 16-2 at 51-53; *see* Cal. Penal Code §§ 187, 12022(b)(1).  The trial court sentenced Petitioner to sixteen years to life in state prison.  Dkt. 16-2 at 53.
>
> On August 26, 2010, the California Court of Appeal affirmed the judgment.  *Id.* at 51.
>
> On December 1, 2010, the California Supreme Court denied review.  *Id.* at 38.
>
> On February 24, 2012 (date of declaration of service to prison authorities for "legal mailing"), Petitioner filed a document entitled, "Motion for Stay and Abeyance."  Dkt. 1.  He requested a

1    stay of these proceedings to return to state court and exhaust his
     state court remedies.  *Id.*

2          On April 25, 2012,[1] Petitioner constructively filed the instant
3    petition in this Court, raising ten claims.  Dkt. 4.  Petitioner filed
     another request for a stay in order to exhaust remedies, specifically
4    as to seven of his ten claims.  Dkt. 5.

5          On May 7, 2012, the Court granted Petitioner's request to
     stay proceedings.  Dkt. 6.

6          Petitioner returned to state court and filed state habeas
7    petitions in the state superior, appellate and supreme courts,
     respectively, commencing on or about September 17, 2012, with the
8    filing of his state superior court petition and concluding on February
     12, 2014, with the denial of his state supreme court petition.  Dkt. 14
9    at 2; Dkt. 16-2 at 2, 42-47; *see* Dkts. 7-13.

10         After pursuing collateral review in state court, Petitioner
     returned to this Court on February 12, 2014 and filed a request to lift
11   the stay.  Dkt. 14.

12         On February 28, 2014, the Court directed Petitioner to file an
     amended petition "which incorporates the newly-exhausted claims
13   he intends to raise in federal court."  Dkt. 15 at 2.

14         On April 7, 2014, Petitioner filed an amended petition.  Dkt.
     16.

15         On April 23, 2014, the Court lifted the stay and issued an
16   order to show cause.  Dkt. 17.

     Dkt. 25 at 1-2 (footnote in original).

17         On June 27, 2014, in lieu of an answer, Respondent moved to dismiss the petition as

18   untimely and procedurally barred.  Dkt. 9.  After full briefing by the parties, the Court issued an

19   order finding that the petition "is barred as untimely under 28 U.S.C. § 2244(d)(1) unless he can

20   show that he is entitled to equitable tolling."  Dkt. 25 at 6.  In his opposition to the motion,

21   Petitioner had argued that he is entitled to equitable tolling on the grounds that his limited law

22   library access prevented him from filing a timely federal habeas petition.  Dkt. 23 at 2.  However,

23

24   _____

25         [1] A *pro se* federal or state habeas petition is deemed filed on the date it is delivered to
     prison authorities for mailing.  *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001),
26   *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a
     federal or state habeas petition is deemed filed on the date the prisoner submits it to prison
27   authorities for filing, rather than on the date it is received by the court).  Petitioner claims he
     submitted his petition to "housing staff" for "legal mailing" on April 25, 2012.  Dkt. 14 at 23.  For
28   the purposes of this discussion, the Court deems his petition as filed on that date.  *See Saffold*, 250
     F.3d at 1268.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the Court found that Respondent had not adequately addressed that argument.  Dkt. 25 at 9.

2   Consequently, the Court denied the motion to dismiss the petition as untimely, without prejudice

3   to Respondent's renewing the motion and addressing equitable tolling.  *Id.* at 9-10.  Additionally,

4   the Court declined to address at that time Respondent's alternative argument that claims 4-10 of

5   the petition are procedurally barred.  *Id.* at 10 footnote 4.

6         In the instant motion to dismiss, Respondent renews the argument that all of the claims in

7   the petition are untimely and addressed the matter of equitable tolling.  Dkt. 28 at 3-9.  He also

8   renews the argument that claims 4-10 of the petition are procedurally barred.  *Id.* at 9.  Petitioner

9   has filed an opposition.  Dkt. 29.  Respondent has filed a reply.  Dkt. 30.

10   **II.        DISCUSSION**

11         **A.        Overview**

12         AEDPA, effective April 24, 1996, imposes a limitations period on petitions for a writ of

13   habeas corpus filed by state prisoners.  In prisoner actions challenging non-capital state

14   convictions or sentences, a habeas petition must be filed within one year of, inter alia, the date the

15   judgment became final after the conclusion of direct review or the time passed for seeking direct

16   review.   28 U.S.C. § 2244(d)(1).  "Direct review" includes the period within which a petitioner

17   can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the

18   petitioner actually files such a petition.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

19   Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court,

20   AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by

21   Supreme Court Rule 13 expires.  *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002); *Bowen*,

22   188 F.3d at 1159 (same).

23         In the present case, the California Supreme Court denied review on December 1, 2010.

24   The judgment became final for purposes of the AEDPA statute of limitations ninety days later, on

25   March 1, 2011.  *See id.*  The one-year limitations period, therefore, began to run on that date.  As

26   such, Petitioner had until March 1, 2012 to file the instant petition.  *See* 28 U.S.C. § 2244(d).

27

28

1    Petitioner did not file the present petition until April 25, 2012,[2] almost two months after

2    the limitations period had expired.  The petition is therefore untimely unless Petitioner can show

3    that he is entitled to equitable tolling.

4        **B.    Standard for Equitable Tolling**

5        The Supreme Court has determined that AEDPA's statute of limitations is subject to

6    equitable tolling in appropriate cases.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "When

7    external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

8    claim, equitable tolling of the statute of limitations may be appropriate."  *Miles v. Prunty*, 187

9    F.3d 1104, 1107 (9th Cir. 1999).  However, equitable tolling is unavailable in most cases because

10   extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's

11   control make it impossible to file a petition on time."  *See Calderon v. United States Dist. Court

12   (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted), *overruled in part on other

13   grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

14   The party seeking equitable tolling bears the burden of establishing two elements: "(1) that he has

15   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

16   way," preventing timely filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  "[T]he threshold

17   necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the

18   rule."  *Id.* at 1066 (internal quotations and citation omitted).  At the same time, "[r]ather than let

19   procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave

20   difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor."  *Lott v.

21   Mueller*, 304 F.3d 918, 920 (9th Cir. 2002).  When a prisoner is proceeding *pro se*, his allegations

22   regarding diligence in filing a federal petition on time must be construed liberally.  *Roy v.

23   Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

24

25        [2] The Court previously found that statutory tolling was not sufficient to overcome the time
26   bar to Petitioner's federal habeas petition. Dkt. 25 at 5-6.  The Court also rejected Petitioner's
     argument that he commenced this instant action by filing a motion for stay and abeyance on
27   February 24, 2012.  *Id.* at 3-5.  Contrary to Petitioner's claim, there was no timely *petition* pending
     on February 24, 2012, the date that this action commenced.  *Id.* at 4.  Accordingly, the Court
28   considered only whether this action was timely based on the date Petitioner filed his petition—on
     April 25, 2012—rather than on the date he filed his motion for stay and abeyance.  *See id.* at 4-5.

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.     Analysis**

As mentioned above, the Court has found that the instant federal petition filed on April 25, 2012 is untimely by two months.  Petitioner has previously sought equitable tolling based on his limited law library access of only three hours a week during the "relevant time frame," which is construed to be from the date the limitations period began running on March 1, 2011 to the end of the one-year limitations period on March 1, 2012.  Dkt. 23 at 2.  "[O]rdinary prison limitations on . . . access to the law library and copier" do not constitute extraordinary circumstances or make it impossible to file on time.  *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted); *see, e.g., Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (prisoner's *pro se* status, law library missing a "handful" of reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life").   However, the Court still found it "conceivable that equitable tolling might be warranted because Petitioner claims he was prevented from preparing a timely petition due to his limited access to the law library."   Dkt. 25 at 8-9.

In the present renewed motion to dismiss, Respondent again argues that Petitioner's entire allegation of limited access to the library in his opposition was that he was "afforded an average of less than 3 hours per week of access [to] a law library."  Dkt. 28 at 7 (citing to Dkt. 23 at 2).  As Respondent has argued in its original motion to dismiss, he again argues in his renewed motion that a limitation of "three hours per week of law library time" is not extraordinary, and that Petitioner was not hindered from working on his petition in his cell.  *Id.*  However, in response to the Court's request to address Petitioner's claim that his limited access to the law library *prevented* him from filing a timely petition, counsel for Respondent has

> requested, from the California from the California Correctional Center (CCC),[FN 4] all extant records reflecting petitioner's actual law library visitation over the limitations period at issue.
>
> [FN 4:]  From June 3, 2009 to March 29, 2012, petitioner was housed at the California Correctional Center in Susanville.  Exh. 6 at ¶ 2.  Petitioner's term at CCC covers the limitations period at issue, March 1, 2011 to March 1, 2012.  *See* Doc. 25 at 3, 5.

*Id.*, Ex. 6 ("Ott Decl.") ¶¶ 2-3 (footnote in original).  Counsel claims that he received from CCC

United States District Court
Northern District of California

1   the documents attached as Exhibit 1 to the renewed motion, which consist chiefly of copies of

2   pages of a law library visitation log during the relevant time frame.[3]  Dkt. 28, Ex. 1; Ott Decl. ¶ 4.

3   To the extent that these law library logs are decipherable, they show law library visits by

4   Petitioner on the following dates: March 22, 2011; May 24, 2011; June 24, 2011; July 21, 2011;

5   August 4, 2011; January 31, 2012; February 4, 2012; February 7, 2012; February 17, 2012;

6   February 21, 2012; February 23, 2012; and February 28, 2012.  *See* Dkt. 28, Ex. 1; Dkt. 28-1 at 2-

7   15.  The various entries vary in duration, but average about two hours per visit.  *See id.*

8   Respondent does not concede, however, that Petitioner was limited to the durations or frequency

9   reflected in those pages.  Dkt. 28 at 7.  In fact, as explained above, Petitioner claimed in his

10  opposition that he was "limited" to law library access of "three hours *per week*."  Dkt. 23 at 2

11  (emphasis added).  However, the record shows that Petitioner did not take advantage *each week* of

12  the allotted three hours per week.  First, the law library logs show that Petitioner accessed the law

13  library once a month from March 2011 through August 2011.  *See* Dkt. 28, Ex. 1; Dkt. 28-1 at 2-7.

14  The logs do not indicated any law library visits by Petitioner after August 4, 2011 until January

15  30, 2012.  *See id.* at 2-15.  Petitioner's law library visits then begin again on January 31, 2012 and

16  occur more frequently—taking place once a week until February 17, 2012, and two times during

17  the week of February 20, 2012.  *See id.* at 10-15.

18          After submitting the aforementioned information relating to Petitioner's law library access,

19  Respondent also presents the Court with the established rules concerning permissible law library

20  access, and he argues that Petitioner "has offered nothing indicating he availed himself of such

21  access."  Dkt. 28 at 7.  Respondent explains the law library access rules and argues Petitioner's

22  limited efforts to avail of such access, as follows:

23          The California Department of Corrections and Rehabilitation
            (CDCR) recognizes two types of law library user: Priority Legal
24          Users (PLUs) and General Legal Users (GLUs).  Cal. Code Regs. tit.
            15 § 3122(b); Cal. Dep't of Corrs. and Rehab. Operations Manual,
25          Cal. Corr. Center Supp. (DOM CCC Supp.) § 11020.10.1.  Briefly, a

26

27          [3] The record states that the law library logs from June 2009 through July 2010 "could not
    be located."  Ott Decl. ¶ 4.  However, that June 2009 through July 2010 time frame is outside the
28  relevant time frame of March 1, 2011 through March 1, 2012.  Therefore, the missing information
    is irrelevant to the Court's equitable tolling analysis.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLU is an inmate who has an established case or statutory deadline. Cal. Code Regs. tit. 15 § 3122(b); DOM CCC Supp. § 11010.10.1. A GLU is defined as any inmate not on PLU status. Cal. Code Regs. tit. 15 § 3122(b). Petitioner applied for and was granted PLU status in December 2011. Exh. 1, PLU Request and Declaration; *see* Cal. Code Regs. § 3122(b); DOM CCC Supp. § 11010.10.1. At all other times, he was a GLU.

Unless prison conditions require otherwise, a PLU receives a minimum of four hours per week of law library access. Cal. Code Regs. tit. 15 § 3123(b). GLU inmates receive a minimum of two hours per week of law library access. Cal. Code Regs. tit. 15 § 3123(b); DOM CCC Supp. §11020.10.1. A GLU or PLU whose law library access is otherwise restricted, e.g., during a lockdown, may request the delivery of legal materials to his cell via a process referred to as "library paging." Cal. Code Regs. tit. 15, § 3123(c)-(e).

In sum, petitioner has failed to show that CDCR Regulations were not followed, i.e., that he attempted to, but was denied, the ability to access the law library at least two hours per week as a GLU, and at least four hours per week as a PLU. *See* Cal. Code Regs. tit. 15 § 3123(b).

*Id.* at 8 (footnote omitted). Upon reviewing the record, this Court agrees with Respondent that the record shows that Petitioner did not avail of the CDCR's permissible law library access. Thus, it seems that even though Petitioner has argued that he was limited to "less than 3 hours per week" of law library access and such a limitation prevented him from filing a timely federal petition, Respondent rebuts such an allegation by showing that Petitioner's limited efforts to avail of law library access indicates that it was his lack of diligence as opposed to his limited access to the law library that was the cause of his untimeliness.

Moreover, even if Petitioner's allegation were true—that he was limited to "less than 3 hours per week" of law library access—such limitations are not extraordinary on their face, and should have provided more than enough time for Petitioner to have prepared the original petition he filed on April 25, 2012. *See* Dkt. 4. Examining the instant federal petition that was filed, his claims are simply skeletal, containing very little analysis. *Id.* at 10-22. The need for substantial law library access is not suggested by the instant petition or this record.

In addition, Petitioner has never explained why access to the law library was necessary at all. The record shows that on December 3, 2010, before the limitations period commenced, Petitioner's appellate counsel, John Ward, Esq., explained that he recommended that Petitioner file

7

1   "a petition for habeas corpus in the U.S. District Court, Northern District of California" and

2   Attorney Ward included the correct federal court address: "450 Golden Gate Avenue, San

3   Francisco, California 94102." Dkt. 28, Ex. 1; Dkt. 28-1 at 8.   Attorney Ward provided Petitioner

4   with a blank habeas petition form and a blank application to proceed *in forma pauperis*. *Id.*

5   Attorney Ward also explained that the "deadline for that [federal] petition is February 29, 2012."

6   *Id.* Furthermore, Petitioner does not deny he was in possession of his state court record, and thus

7   presumably he could have prepared the bulk of the petition he filed within his cell.

8   In sum, Petitioner fails to show either that he has been diligent or that "extraordinary

9   circumstances" stood in his way and prevented a timely filing.  Petitioner fails to explain why the

10   alleged three-hour-a-week law library access was insufficient, or why he did not consistently avail

11   of such weekly access to the law library during the relevant period.[4]

12   In his opposition to the renewed motion, Petitioner concedes that he has made "critical

13   mistakes . . . in [his] good faith attempt to present his petition and pursue[] justice." Dkt. 29 at 2.

14   He does not dispute that his petition is untimely, instead he stresses that aside from his limited

15   access to the law library, he is "highly unqualified" to "litigate as a profession" and that "the

16   breadth and the scope of the material were of great significance to the timely filing of the

17   petition." *Id.*  The Court construes the aforementioned as Petitioner's renewed argument that he is

18   entitled to equitable tolling based on his *pro se* status and voluminous case file in addition to his

19   limited access to the prison law library.  As mentioned in the Court's Order denying the

20   previously-filed motion to dismiss, a *pro se* petitioner's lack of legal sophistication is not, by

21   itself, an extraordinary circumstance warranting equitable tolling.   Dkt. 25 at 8 footnote 3, 9

22   (citing *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)).  The Court noted that "when

23   accompanied with the fact that Petitioner's law library access was limited and his case file was

24   voluminous, such circumstances could arguably be considered 'extraordinary.'" *Id.* at 9.

25   However, the Court stressed that "it is important to note that the standard for equitable tolling

26

27   _____
    [4] In his opposition to the renewed motion, Petitioner claims that he applied for PLU status
    "as early as 8/26/2009," but was "denied because he was being represented by a lawyer." Dkt. 29

28   at 4.  However, such a period is irrelevant and will not be considered in the Court's equitable
    tolling analysis because it is prior to the start of the limitations period.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   requires both the presence of an *extraordinary circumstance* and the inmate's exercise of

2   *diligence*." *Id.* (citing *Holland*, 560 U.S. at 649; *Pace*, 544 U.S. at 418).  At the time the Court

3   denied Respondent's previously-filed motion to dismiss, the question of Petitioner's diligence was

4   unclear.  *Id.*  However, after further factual development of the record, the Court has found above

5   that Petitioner has failed to show that he exercised the requisite diligence in attempting to gain

6   access to the law library in order to file a timely petition.    Thus, without the requisite presence of

7   an *extraordinary circumstance* and Petitioner's exercise of *diligence*, Petitioner's allegation of his

8   *pro* se status alone does not entitle him to equitable tolling.  *Rasberry*, 448 F.3d at 1154; *cf.*

9   *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299-300 (5th Cir. 1998) (*pro se* status during state habeas

10  proceedings did not justify equitable tolling); *United States v. Flores*, 981 F.2d 231, 236 (5th Cir.

11  1993) (*pro se* status, illiteracy, deafness and lack of legal training not external factors excusing

12  abuse of the writ).  Moreover, Petitioner reasserts that the record in his case file is "voluminous,"

13  but he makes no attempt to describe the record in order to justify equitable tolling, despite his

14  burden to do so.  Respondent argues that their copy fits easily into "three banker's boxes" and

15  adds that "[s]uch size is not unusual, however, particularly for a murder case."  Dkt. 30 at 2.

16  Respondent additionally argues that "[i]n any event, the Legislature presumably contemplated that

17  28 U.S.C. § 2244(d) would apply to state judgments regardless of the size of their records."  *Id.*

18  (citing *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (dismissing federal habeas petition challenging

19  capital judgment as untimely because it was filed one day late)).  This Court agrees, and finds that

20  Petitioner is not entitled to equitable tolling based on his "voluminous" case file.

21          Petitioner next asserts that as a consequence of "day to day operations" at the prison, there

22  are "difficulties faced in attempting to access the Facility C Law Library on the Lassen Yard at

23  California Correctional Center."  Dkt. 29 at 2.  Petitioner's argument is unavailing because he does

24  not assert he was housed in the "Lassen Yard" during any or all of the relevant time frame of

25  March 1, 2011 through March 1, 2012.  However, even if he were housed there during the relevant

26  time frame, the circumstances he describes are not unusual.  *See* Dkt. 29 at 2-3.  Restricted

27  movement, even a lockdown preventing an inmate from visiting a law library altogether, is not an

28  "extraordinary circumstance," but rather a fact of life for an incarcerated inmate.  *See Ramirez*,

United States District Court
Northern District of California

1   571 F.3d at 998.  Petitioner's conclusory statement that he was unable to go to the law library

2   while housed in the "Lassen Yard" does not specifically detail the efforts he made to access the

3   law library, when he made them and how they were or were not successful.  *See* Dkt. 29 at 2-3.

4   Petitioner merely describes alleged difficulties in visiting the prison law library, but the Court has

5   already analyzed Petitioner's argument above that his access to the law library was limited.  And

6   the Court has determined that the three-hour-once-a-week law library access that Petitioner alleges

7   simply is not, on its face, an extraordinary circumstance alone or when coupled with Petitioner's

8   lay-man status.  *See Ramirez*, 571 F.3d at 998.  Indeed, "the Constitution does not require that

9   prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able

10  to present their grievances to the courts—a more limited capability that can be produced by a

11  much more limited degree of legal assistance." *Lewis v. Casey*, 518 U.S. 343, 360 (1996).  "[T]he

12  ability to prepare and file a habeas petition on time is not dependent on unlimited access to the law

13  library.  It generally suffices to have access to one's legal materials (which most prisoners keep in

14  their cells) and some degree of access to a law library or 'paging system.'" *Hebner v. McGrath*,

15  2001 U.S. Dist. LEXIS 9477, *10 (N.D. Cal. 2001), *rev'd on other grounds*, 60 F. App'x 691 (9th

16  Cir. 2003).  Here, Petitioner was always in possession of his trial record, and was aware of its

17  contents, having sat through the trial it documented.  Petitioner presumably could have prepared

18  the bulk if not all of his petition within his cell, as the Court has indicated above.

19       In conclusion, the Court finds that Petitioner's *pro se* status, his voluminous case file, and

20  his limited access to the prison law library did not make it impossible for him to file a federal

21  petition on time, *Beeler*, 128 F.3d 1288; nor were they the cause of his untimeliness, *Pace*, 544

22  U.S. at 418.  Accordingly, Respondent's renewed motion to dismiss is GRANTED.[5]

23  ## III.   CERTIFICATE OF APPEALABILITY

24       The federal rules governing habeas cases brought by state prisoners have been amended to

25  require a district court that dismisses or denies a habeas petition to grant or deny a certificate of

26  appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

27

28  _____

[5] Because the Court has granted Respondent's motion to dismiss as untimely, the Court
need not address the alternative grounds of dismissal of certain claims as procedurally barred.

foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Respondent's renewed motion to dismiss petition (dkt. 28) is GRANTED, and the petition is DISMISSED with prejudice.

2.     A certificate of appealability is DENIED. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3.     The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

4.     This Order terminates Docket No. 28.

IT IS SO ORDERED.

Dated:  November 4, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge

11